**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NOV 24 2004

Ruben Castillo
U. S. DISTRICT COURT JUDGE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 04 CR 976 |
| vs. ) | |
| ) | Judge Ruben Castillo |
| SALWAN TRADING INC. ) | |

DOCKETED NOV 29 2004

## PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD and the defendant, SALWAN TRADING INC., by its authorized representative and attorney, THOMAS M. DURKIN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case number 04 CR 976.

This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever, of the United States or its agencies. Moreover, this Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities except as expressly set forth in this Agreement.

By this Plea Agreement, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and the defendant, SALWAN TRADING INC., by its



authorized representative and attorney, THOMAS M. DURKIN, have agreed upon the following:

1. Defendant acknowledges that it has been charged in the information with knowingly introducing into the commerce of the United States imported merchandise by means of fraudulent or false statements, in violation of Title 18, United States Code, Section 542.

2. Defendant has read the charge against it contained in the information, and the charge has been fully explained to it by its attorney.

3. Defendant fully understands the nature and elements of the crime with which it has been charged.

4. Defendant will enter a voluntary plea of guilty to the charge contained in the information.

5. Defendant, by its authorized representative, will plead guilty because it is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following, which establish its guilt and relevant sentencing facts beyond a reasonable doubt:

On or about June 6, 2000, at Chicago, in the Northern District of Illinois, Eastern Division, defendant, through certain of its officers and employees, did knowingly cause to enter or introduce, or attempt to cause to enter or introduce, into the commerce of the United States any imported merchandise, namely, Betel Nut products, by means of fraudulent or

2

false paper or by means of false statement, written or verbal, namely, failing to specify in its United States Customs Service Form 3461 and bill of lading that the shipment contained Betel Nut products, without reasonable cause to believe the truth of such statement, in violation of Title 18, United States Code, Section 542.

Defendant SALWAN TRADING INC. ("SALWAN" or "the defendant") was an Illinois corporation, which was engaged in the business of, among other things, importing food products from India. One type of food product that defendant imported from India was "Betel Nuts." During the time that defendant imported Betel Nuts, it had between 10 and 50 employees.

Betel Nuts and any products containing Betel Nuts ("Betel Nut products") were not allowed to be imported for human consumption because they contained "Arecoline," a carcinogen prohibited by regulations of the United States Food and Drug Administration ("the FDA").

From in or about 1996 through 2000, defendant imported products into the United States without identifying in the invoices, shipping records, and other documentation it submitted to its customhouse broker that these shipments contained Betel Nut products. Defendant affirmatively mislabeled the contents of certain shipments to disguise the fact they contained Betel Nut products.

Defendant knew that its customhouse broker relied on the description of the products in its invoices, shipping records, and other documentation to determine which Tariff Codes

required by United States Customs Service Form ("USCS") and Product Codes required by the FDA to use to identify the products being imported. Defendant knowingly failed to include in the descriptions of products in its invoices, shipping records, and other documentation submitted to its customhouse broker that some of the shipments it imported from 1996 through 2000 contained Betel Nut products, including, among others:

On or about July 27, 1996, defendant imported a shipment of approximately 11,605 pounds of products, some of which contained Betel Nut products, under the USCS entry number K93-0084075-7. Defendant, however, described this shipment in its invoice as "pan parag" and "supari cracked." As a result, defendant's customhouse broker failed to report to the USCS the Tariff Code of 0802.90.9890 - Other Nuts, which should have been reported for Betel Nut products. Based on the failure to report the Tariff Code for Betel Nut products, this shipment was allowed entry into the United States. The value of Betel Nut products in this shipment was approximately $3,648.75.

On or about July 20, 1999, defendant imported a shipment of food products, which contained Betel Nut products, under the USCS entry number K93-0115999-1. Defendant, however, described this shipment in its invoice as "pooja supari." As a result, defendant's customhouse broker reported to the USCS the Tariff Code of "3203.00.8000 - Other Coloring Mater. Veg/Animl" and to the FDA the Product Code of "50BFY01 - Color Additive." Based on these Tariff and Product Codes, this Betel Nut shipment was allowed

4

entry into the United States. The value of the Betel Nut products in this shipment was approximately $6,448.

On or about May 23, 2000, defendant imported a shipment under the USCS entry number K93-0125788-6 into the United States. On June 10, 2000, this shipment was transported via rail from Detroit, Michigan to Chicago, Illinois, where it arrived on June 12, 2000. This shipment of food products contained approximately 2,600 pounds of Betel Nut products. Defendant, however, described this shipment on its Form 3461 as "assorted food products" and in the invoices associated with these products as "Lijjat Papadmumbai" and "pooja supari unroasted tukda." As a result, its customhouse broker reported to the USCS the Tariff Code of "1905.30.0049 - Sweet Biscuits; Waffles from Others" and to the FDA the Product Code of "03MGY99 - Bakery Product/Dough/Mix/Icing." Based on these Tariff and Product Codes, this Betel Nut shipment was allowed entry into the United States. The value of the Betel Nut products in this shipment was approximately $4,260.

On or about June 6, 2000, defendant imported a shipment of 15,936 pounds of products, some of which contained Betel Nut products, under the USCS entry number K93-0125800-9 into the United States. Defendant, however, described this shipment on its Form 3461 as "asstd food products," in the bill of lading associated with these products as "assorted food products," and in the invoices as "pooja supari unroasted" and "roasted whole supari." As a result, defendant's customhouse broker reported to the USCS the Tariff Code of "3203.00.8000 - Other Coloring Mater. Veg/Animl" and to the FDA the Product Code of

5

"50BFY01 - Color Additive." Based on these Tariff and Product Codes, this Betel Nut shipment was allowed entry into the United States. The value of the Betel Nut products in this shipment was approximately $1,489.

The total value of the Betel Nut products in the shipments above was approximately $15,845.75, and the duties avoided by not declaring the Betel Nut content of these shipments was approximately $4,753.73. An individual with substantial authority within defendant participated in this offense.

6. For purposes of applying the guidelines promulgated by the United States Sentencing Commission pursuant to Title 28, United States Code, Section 994, the parties agree on the following points:

(a) The Sentencing Guidelines to be applied in this case are those effective November 5, 2003.

(b) Pursuant to Guidelines Section 8C2.3, the guidelines for the offense of conviction are U.S.S.G. §§ 2T3.1(a)(1) and 2T4.1(C), which provide that the base offense level is 8 based on duties avoided of at least $2,000 but not more than $5,000.

(c) The base fine level for this offense is $10,000, pursuant to Guidelines Section 8C2.4(a) as the greater of the known pecuniary gain to the defendant from the offense caused by defendant and the Guidelines Section 8C2.4(d) Offense Level Fine Table.

(d) The culpability score is 4, based on a base level of 5 points under Guidelines Section 8C2.5(a), plus one point for defendant being an organization with 10 or

more employees and an individual within substantial authority personnel who participated in the offense, less 2 points for Cooperation and Acceptance of Responsibility under Guidelines Section 8C2.5(g)(2).

(e) Based on the defendant's culpability score of 4 points as calculated in subparagraph 6(d) above, the minimum multiplier is .80 and the maximum multiplier is 1.60, pursuant to Guidelines Section 8C2.6.

(f) The defendant and its attorney and the government acknowledge that the above calculations are preliminary in nature and based on facts known to the government as of the time of this Agreement. The defendant understands that the Probation Department will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations.

7. Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the probation office and/or court setting forth the disagreement as to the correct guidelines and their application. The validity of this Agreement will not be affected by such corrections, and the defendant shall not have a right to withdraw its plea on the basis of such corrections.

8. Defendant understands the charge to which it will plead guilty carries a maximum penalty of a fine of $500,000, a term of probation of not less than one year and up to five years, and any restitution ordered by the Court.

9. The defendant understands that in accord with federal law, Title 18, United States Code, Section 3013, upon entry of judgment of conviction, the defendant will be assessed $400 for the charge to which it has pled guilty, in addition to any other penalty imposed. The defendant agrees to pay the special assessment of $400 at the time of sentencing with a check or money order made payable to the Clerk of the U. S. District Court.

10. Defendant understands that by pleading guilty it surrenders certain rights, including the following:

(a) If defendant persisted in a plea of not guilty to the charges against it, it would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and its attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification

is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty as to each count. The jury would be instructed that defendant is presumed innocent, and that it could not convict it unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt as to each count.

(c) If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt as to each count.

(d) At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and its attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in its own behalf. If the witnesses for defendant would not appear voluntarily, it could require their attendance through the subpoena power of the court.

(e) At a trial, defendant would have a privilege against self-incrimination so that it could decline to testify, and no inference of guilt could be drawn from its refusal to testify. If defendant desired to do so, it could testify in its own behalf.

(f) Defendant understands that it has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a legally constituted grand jury consisting of not less than sixteen and not more than twenty-three

members. By signing this Agreement, defendant knowingly waives its right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that it has been prosecuted by way of information.

11. Defendant understands that it may be entitled to have any disputed sentencing fact which could increase its sentence determined at a jury trial under a proof beyond a reasonable doubt standard. Defendant further understands that by pleading guilty, it agrees:

   a. To have its sentence determined under the Sentencing Guidelines;

   b. To waive having sentencing facts alleged in the Information and found by the jury beyond a reasonable doubt;

   c. To have the court determine its sentencing facts by a preponderance of the evidence; and

   d. To allow the Court to consider any reliable evidence, including hearsay, in determining its sentence.

12. Defendant understands that by pleading guilty it is waiving all the rights set forth in the prior two paragraphs. Defendant's attorney has explained those rights to it, and the consequences of its waiver of those rights. Defendant further understands it is waiving all appellate issues that might have been available if it had exercised its right to trial, and only may appeal the validity of this plea of guilty or the sentence.

13. The defendant is also aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction or the manner in which that sentence was determined, in exchange for the concessions made by the United States in this Plea Agreement. The defendant also waives its right to challenge its sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

14. Defendant understands that the information and this Plea Agreement are matters of public record and may be disclosed to any party.

15. Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against it, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

16. At the time of sentencing, the parties agree that the sentence imposed by the Court include a fine of $16,000, which is the maximum fine determined by multiplying the base fine of $10,000 determined under Guidelines Section 8C2.4 by the applicable maximum multiplier of 1.60 under Guidelines Section 8C2.6, pursuant to Guidelines Section 8C2.7.

17. Regarding restitution, the parties agree that as a part of the sentence, the Court shall order defendant to pay restitution in the amount of $4,753.73 to United States Customs Service. The defendant understands that Title 18, United States Code, Sections 3663 and 3664 and the Sentencing Guidelines Sections 5E1.1 and 5E1.2 set forth the factors to be weighed in setting a fine and restitution in this case. The parties agree and stipulate that the defendant has the financial ability to pay restitution in the amount of $4,753.73. If defendant becomes unable to pay the full restitution amount, the defendant agrees to provide full and truthful information to the Court and United States Probation Officer regarding all details of his economic circumstances in order to determine the proper restitution which the defendant shall be ordered to pay. Defendant understands that providing false or incomplete information may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the court.

18. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and, subject to the limitations of the Sentencing Guidelines, may impose the maximum penalties as set forth in paragraph 8 above. The defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw her guilty plea.

19. Defendant understands that its compliance with each part of this Plea Agreement extends throughout and beyond the period of its sentence, and failure to abide by any term of the Plea Agreement is a violation of the Agreement. Defendant further

understands that in the event it violates this Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this Agreement, or to resentence the defendant. The defendant understands and agrees that in the event that this Plea Agreement is breached by the defendant, and the Government elects to void the Plea Agreement and prosecute the defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

20. Defendant and its attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

21. Defendant agrees this Plea Agreement shall be filed and become a part of the record in this case.

22. Defendant acknowledges that it has read this Agreement and carefully reviewed each provision with its attorney. Defendant further acknowledges that it understands and voluntarily accepts each and every term and condition of this Agreement.

23. Defendant certifies that attached to this Plea Agreement is a true copy of: (a) a resolution of defendant's Board of Directors (entitled "Written Consent of the Sole Director") making Thomas M. Durkin defendant's authorized representative for all purposes of this case, including waiving indictment, entering into this plea agreement, and pleading guilty; and (b) the certification by the defendant's Secretary verifying that the Written Consent of the Sole Director was adopted by defendant and signed by the defendant's sole director.

AGREED THIS DATE: 11/24/04

PATRICK J. FITZGERALD
United States Attorney

SALWAN TRADING, INC.
Defendant, by Thomas M. Durkin

PRAVIN B. RAO
Assistant United States Attorney

THOMAS M. DURKIN
Attorney and Authorized Representative
for Defendant

# WRITTEN CONSENT OF THE SOLE DIRECTOR OF

# SALWAN TRADING INC.

# IN LIEU OF A SPECIAL MEETING OF THE SOLE DIRECTOR

I, the undersigned, being the sole director of SALWAN TRADING INC. ("the Corporation"), an Illinois corporation, do hereby consent pursuant to Section 8.45 of the Illinois Business Corporation Act of 1983, in lieu of a special meeting of the director, to the adoption of the following resolution:

RESOLVED, that THOMAS M. DURKIN of the law firm of Mayer, Brown, Rowe & Maw, LLP, is hereby authorized and directed to appear on behalf of the Corporation in the United States District Court, Northern District of Illinois and enter a plea of guilty on behalf of the Corporation to such charge as may be pending against it in the case captioned: United States of America v. Salwan Trading Co., Inc.

_____     November 4, 2004
Ayohdia Salwan, Sole Director            Date

1

## CERTIFICATE OF THE SECRETARY OF

## SALWAN TRADING INC.

I, the undersigned, being the duly appointed and current secretary of SALWAN TRADING INC. ("the Corporation"), an Illinois corporation, do hereby certify that the following resolution was considered by the sole Director of the Corporation and adopted by the Corporation in the form of a "Written Consent of Sole Director" signed by him on November 4, 2004.

> *RESOLVED, that THOMAS M. DURKIN of the law firm of Mayer, Brown, Rowe & Maw, LLP, is hereby authorized and directed to appear on behalf of the Corporation in the United States District Court, Northern District of Illinois and enter a plea of guilty on behalf of the Corporation to such charge as may be pending against it in the case captioned: United States of America v. Salwan Trading Inc.*

_____          November 4, 2004
Prem K. Salwan, Secretary                Date

1